UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC NUNEZ,<br><br>              Plaintiff,<br><br>v.<br><br>ALIBABA GROUP (U.S.), INC., et al.,<br><br>              Defendants. | Case No.: 3:24-cv-090-JES -SBC<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO REMAND; and**<br><br>**(2) DENYING AS MOOT MOTIONS TO DISMISS**<br><br>**[ECF Nos. 5, 6, 10]** |

Before the Court are several motions filed by the parties: (1) Defendant AliExpress E-Commerce One Ptd. Ltd.'s motion to dismiss (ECF No. 5); (2) Defendant Alibaba Group (U.S.), Inc.'s motion to dismiss (ECF No. 6); and (3) Plaintiff Eric Nunez's motion to remand (ECF No. 10). The respective parties filed oppositions and replies to these motions. ECF Nos. 17, 19, 22-25. On March 6, 2024, the Court held a hearing on the motion to remand, and vacated the hearing on the motions to dismiss. ECF No. 20. After due consideration and for the reasons discussed below, the motion to remand is **GRANTED**. Because the Court remands the case, the Court **DENIES AS MOOT** Defendants' motions to dismiss.

# I. BACKGROUND

On September 23, 2020, Plaintiff Eric Nunez ("Nunez") purchased a CHICWAY s7 four-wheel electric skateboard from Defendants online. ECF No. 1-3 at ¶ 8. Subsequently, on December 10, 2020, Plaintiff alleges that he was severely injured while riding the skateboard when it hit a drive way bump that caused a wheel to fall off the skateboard. *Id.* at ¶ 8. The incident caused Plaintiff to lose his balance and fall, resulting in "severe injuries, including a broken clavicle." *Id.* Based on this incident, Plaintiff brings causes of action for: 1) negligent product liability; 2) design and manufacturing defect; 3) strict product liability for failure to warn of dangerous condition; 4) breach of implied warranty; and 5) breach of express warranty. *Id.* at ¶¶ 9-48.

The case was removed from state court to this Court on January 12, 2024. ECF No. 1. In the Notice of Removal, Defendants assert that there is subject matter jurisdiction over the case through diversity jurisdiction. *Id.* at ¶¶ 11-42. Shortly after, Defendants filed two motions to dismiss, and Plaintiff filed a motion to remand the case to state court. ECF Nos. 5, 6, 10.

## II. Motion to Remand

### A. Legal Standard

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). In a case originally brought in state court, a defendant may remove the action to federal court if there is federal subject matter jurisdiction. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.").

"Consistent with the limited jurisdiction of federal courts, the removal statute is strictly construed against removal jurisdiction." *Audo v. Ford Motor Co.*, 2018 WL 3323244 *1 (S.D. Cal. July, 2018) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). Therefore, the "burden of establishing that removal is proper" always lies with

the defendant. *Gaus*, 980 F.2d at 566. If there is any doubt as to the propriety of removal, the court shall reject federal subject matter jurisdiction. *Id.*; *see also Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018) ("If a district court determines at any time that less than a preponderance of the evidence supports the right of removal, it must remand the action to the state court.").

Federal subject matter jurisdiction may arise based on federal question or diversity jurisdiction. 28 U.S.C. § 1331, 1332(a). In the notice of removal, Defendants state that this court has federal subject matter jurisdiction over the matter based on diversity jurisdiction. ECF No. 1 ¶ 11. The statute requires complete diversity between plaintiffs and defendants. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). An individual is deemed to be a citizen of the state in which he or she is domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). A limited liability corporation is "a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Further, to satisfy § 1332, the matter in controversy must exceed the sum or value of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a).

Under 28 U.S.C. § 1446, a defendant removing a civil action from state to federal district court must include "a short and plain statement of the grounds for removal," including as to the amount in controversy being met. 28 U.S.C. § 1446(a). Where a plaintiff challenges the defendant's allegation of jurisdiction under § 1332(a), § 1446 provides that "removal of the action is proper on the basis of an amount in controversy asserted [in the notice of removal] if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." 28 U.S.C. § 1446(c)(2)(B); *see Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). In *Dart*, the Supreme Court recognized that this provision was added to § 1446 as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 to "clarify[] the procedure in order when a defendant's assertion of the amount in controversy is challenged. In such a case, both sides submit

3

3:24-cv-090-JES-SBC

1  proof and the court decides, by a preponderance of the evidence, whether the amount-in-
2  controversy requirement has been satisfied." *Id.* Even though *Dart* arose under the Class
3  Action Fairness Act ("CAFA"), other courts within this circuit have applied this
4  framework to non-CAFA cases. *See De Villing v. Sabert Corp.*, No.
5  EDCV182201JGBKKX, 2018 WL 6570868, at *2 (C.D. Cal. Dec. 11, 2018) (noting that
6  *Dart* interpreted 28 U.S.C.§ 1446 which applies equally to CAFA and general diversity
7  jurisdiction cases and collecting cases applying *Dart* to non-CAFA cases).
8        Thus, the evidence that the Court may consider here includes "evidence outside the
9  complaint, including affidavits or declarations, or other 'summary-judgment-type
10 evidence relevant to the amount in controversy at the time of removal.'" *Ibarra v.*
11 *Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing *Singer v. State*
12 *Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Removal jurisdiction
13 therefore cannot rely on "mere speculation and conjecture, with unreasonable
14 assumptions." *Id.*

**B.  Discussion**

On the issue of remand, the parties dispute both whether the amount in controversy of $75,000 is met and whether complete diversity is met.

    **i.  Amount in Controversy**

Because the parties dispute whether the amount in controversy is met, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart*, 574 U.S. at 88. Thus, before reaching the issue of whether Defendants have met their burden of showing that the amount in controversy is met, the Court will initially discuss the evidence submitted by both parties and what evidence it will consider in ruling on the remand motion. The evidence that the parties submit is as follows:

**Plaintiff's Evidence in his moving motion**: In his initial motion, Plaintiff cited to its interrogatory responses dated January 9, 2024[1] that detail the damages as follows: past medical expenses for $16,009.04; future medical expenses of $0; property damage of $1,736.66; past loss earnings of $18,456.00; and future loss earnings of $0—for a total of $36,201.70. ECF No. 10-1 at ¶ 7; *id.* Ex. E at 3-5. The Court notes that while Plaintiff characterizes future medical expenses and future earning loss at $0, the interrogatory responses actually ask whether "any health care provider has advised [Plaintiff] that he may require future or additional treatment for any injuries that you attribute to the incident" and if he will "lose income in the future as a result of the incident," and Plaintiff answered not at this time to both questions. *Id.* Ex. D at 4; Ex. E at 4-5. Plaintiff acknowledged that this figure does not include any amounts related to pain and suffering, but that it is "guesswork" whether a jury would award such amounts and it is too speculative for Defendants to rely on for the purpose of a motion to remand. ECF No. 10 at 12.

**Defendants' Evidence in opposition**: Defendants in turn cite to a settlement demand letter dated May 22, 2023, where Plaintiff makes a request to settle in the amount of $225,000. ECF No. 17-1, Ex 1. The settlement letter recites the same damages amounts as from the interrogatories for current medical expense and loss wages, but also stated the following:

> "More significantly, Mr. Nunez suffered physical pain, mental suffering, disfigurement, physical impairment, inconvenience, anxiety, humiliation, emotional distress, and overall loss of enjoyment of life.

---

[1] These responses were dated 3 days before the Notice of Remand was filed in this Court on January 12, 2024. ECF No. 1.

> The time following the injury became very stressful for Mr. Nunez. He was out of work for several months. He stayed with his sister so that she could help him as he healed but had to sleep on her couch. His sleeping position was unorthodox as he was on a couch and also had to prop his arm up on a pillow to accommodate his right shoulder and broken clavicle. As a result he developed back pain during that period of time.
>
> Taking care of himself was very difficult as his dominant arm was taken away from him as it healed. He was showering with a shopping bag around his neck as he was instructed by the doctors to avoid getting the injury area and sling wet.
>
> Prior to this injury incident Mr. Nunez had worked as an electronic technician for 30 years for companies including Qualcomm, AA Electronics, General Atomics, and of course at the time of the injury he was working for Centurum. After missing three months of work, when Mr. Nunez returned to work he was "coincidentally" laid off. The lay off came at a very bad time as he would lose his health insurance through his employer. Mr. Nunez had a difficult time getting follow up medical treatment after losing his health insurance.
>
> Living in Encinitas, California Mr. Nunez enjoyed spending his leisure time outdoors and spends his time at the beach, bamboo stick twirling on the beach, tiding his skateboards around the beach areas , and taking beach walks. Following the injury he was cautious and avoided nearly all activity and was isolated.
>
> As evidenced in the medical records, the pain in the shoulder area lingered for more than a year in a half. Mr. Nunez also has a significant scar where the surgery was performed on his clavicle."

In addition, Defendants argue the complaint also includes various allegations regarding the severity of Plaintiff's pain and suffering. *See* ECF No. 1-3 at ¶ s8 ("As a result of the ensuing fall, Plaintiff suffered severe injuries, including a broken clavicle, for which Plaintiff continues to seek medical treatment."); ¶ 44 ("As a direct result of the conduct of the Defendants, Plaintiff has suffered and will continue to suffer serious and permanent physical, and emotional injuries, has expended and will continue to expend

large sums of money for medical care and treatment, and have otherwise been physically injured.").

**Plaintiff's Evidence in his reply motion**: In his reply motion, Plaintiff submits a declaration from his counsel regarding a new settlement offer that was sent to Defendants on February 22, 2024,[2] which now demands $34,465.04 in special damages (calculated from the medical expenses and lost wage numbers recited above) and an additional $34,465.04 in general damages, for a total demand of $68,930.08. ECF No. 19, Ex. J.

\* \* \*

"A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002). While the settlement offer is not itself determinative, it may be considered by the Court. *Id.* Courts within this circuit interpreting *Cohn* have focused on whether the settlement demand reflects "a reasonable estimate" in determining how much weight, if any, to give to the settlement demand. *See Owens v. Westwood Coll. Inc.*, No. CV13-4334-CAS-FFMX, 2013 WL 4083624, at *4 (C.D. Cal. Aug. 12, 2013) (rejecting consideration of settlement demands with "an arbitrary settlement figure, with no showing of how that figure was calculated"). In determining what constitutes a "reasonable estimate," courts consider whether the demand is supported by an "itemized accounting of damages." *Maranon v. Blazin Wings, Inc.*, No. 217CV02704GMNPAL, 2018 WL 11444971, at *2 (D. Nev. Sept. 24, 2018).

Where a plaintiff takes subsequent steps to disavow a damages estimate however, "the estimate, standing alone, is insufficient to show that the requisite amount has been met." *Vitale v. Celadon Trucking Servs., Inc.*, No. CV16-8535 PSG (GJSX), 2017 WL

---

[2] Notably, this settlement demand was sent one day after Defendants' filed their opposition to this motion.

626356, at *3-4 (C.D. Cal. Feb. 15, 2017). Courts so holding have relied on the statement in *Cohn* that the plaintiff there "could have argued that the demand was inflated and not an honest assessment of damages, but he made no attempt to disavow his letter or offer contrary evidence." *Cohn*, 281 F.3d at 840. Thus, courts within this circuit have found disavowals of settlement demands as evidence that the demand does not reflect a "reasonable estimate" and have given little to no weight to such demands. *See, e.g.*, *Walker v. CorePower Yoga, LLC*, No. 12CV0004-WHQ-DHB, 2013 WL 2338675, *7 (S.D. Cal. May 28, 2013) (plaintiff's disavowal of demand meant demand did not "reflect a reasonable estimate of [] claim, and it is insufficient to establish" amount); *Graybill v. Khudaverdian*, No. SACV1501627CJCJCGX, 2015 WL 7295378, at *1 (C.D. Cal. Nov. 17, 2015) (disavowal from plaintiff regarding settlement amount as inflated was "relevant to the determination of whether a demand is a credible estimate of the amount in controversy"); *Leon v. Gordon Trucking, Inc.*, 76 F. Supp. 3d 1055, 1071–72 (C.D. Cal. 2014) (finding demand "facially insufficient" in light of disavowal and defendant's failure to adduce further evidence that it was reasonable or accurate); *Briest v. Knot Standard LLC*, No. CV2002519CJCPVCX, 2020 WL 2572457, at *3 (C.D. Cal. May 20, 2020) (rejecting demand as "reasonable estimate" where plaintiff disavowed amount and finding demand to not be "relevant evidence of the amount in controversy").

With this background in mind, the Court turns to the evidence in this case. First, there are two separate settlement demands that have been mentioned in the briefing—the original settlement demand dated May 22, 2023, referenced in the opposition motion and the settlement demand dated February 22, 2024, referenced in the reply motion. With regard to the settlement demand dated February 22, 2024, the Court exercises its discretion not to consider the new evidence that was only submitted in reply. *See Atigeo LLC v. Offshore Ltd., D.*, No. C13-1694-JLR, 2014 WL 239096, at *8 (W.D. Wash. Jan. 22, 2014) ("[W]hen new evidence or issues are raised on reply, courts have discretion to either strike the reply declarations and portions of the reply brief that present new

material or consider the new material after affording the nonmoving party an opportunity to respond.").

With regard to the settlement demand letter dated May 22, 2023, Plaintiff has now disavowed this demand, stating that "Plaintiffs settlement demand of $225,000 does not reflect Plaintiffs assessment of the value of the case. Rather, the settlement demand was intended to initiate settlement discussions between the parties in an attempt to resolve the litigation. The settlement demand identifies the special damages incurred by Plaintiff Eric Nunez in the amount of $34,465.04. The settlement demand thereafter demands payment of $225,000. The settlement demand was never intended to reflect a reasonable estimate of the value of the case." ECF No. 19-1 at ¶ 2. The Court finds that this constitutes a clear disavowal of this settlement demand. While the demand does quantify the source of the special damages with actual calculations and includes a laundry list of other alleged sources of pain and suffering damages, it includes no explanation whatsoever of how those other general damages should be valued at the remaining $190,534.96 demanded. Without any further explanation, the Court cannot find that this settlement demand "standing alone" constitutes a "reasonable estimate" under *Cohn*, in light of Plaintiff's disavowal. Thus, the Court does not grant it great weight in the remand calculation.

In its opposition and during oral argument, Defendants cited to cases standing for the proposition that the amount in controversy should be determined by the operative complaint at the time of removal and therefore, post-remand declarations or stipulations that limit the requested damages cannot divest the Court of jurisdiction. ECF No. 17 at 9 (citing cases). At first glance, this proposition might stand to conflict with the cases cited above that permit a Plaintiff to expressly disavow a settlement demand, even after a case has been removed and Plaintiff only does so in response to a motion to remand. However, such disavowals only effect the Court's consideration of one piece of evidence—the settlement demand. It does not force the Court to accept a post-remand stipulation by the Plaintiff limiting the damages he seeks, that might be made purposefully to avoid federal court jurisdiction. In other words, while a Court may decline to give much weight to a

3:24-cv-090-JES-SBC

settlement demand after Plaintiff's disavowal, it still remains free to consider other evidence and arguments that Defendants may raise and Defendants are not prohibited from doing so.

Here however, the issue for Defendants is that they present the Court with little other evidence other than the May 22, 2023, settlement demand to substantiate that the amount in controversy exceeds $75,000. The parties are not in dispute with regard with what the special damages are, and that amount is well-supported by itemized calculations. To account for the remaining $40,345.96, Defendants point to statements made in the settlement demand and complaint generally speaking to Plaintiff's pain and suffering. While no one can realistically claim that no value should be assigned to pain and suffering, the problem facing the Court is that no party has presented any evidence on *how* the Court should value it and on a motion to remand, the burden of establishing that removal is proper lies with Defendants. *Gaus*, 980 F.2d at 566. Establishing the amount in controversy cannot rest on "mere speculation and conjecture." *Ibarra*, 775 F.3d at 1197; *see also Lopez v. Walmart, Inc.*, No. 220CV01228GMNVCF, 2021 WL 3566414, at *3 (D. Nev. Mar. 22, 2021) (finding amount in controversy not met where Defendant only proved $48,454.13 in medical expenses but failed to "provide specific calculations for the other forms of requested relief—attorney's fees, pain and suffering, and punitive damages"). This, coupled with the "strong presumption" against removal jurisdiction, requires the Court to find here that Defendants have not met their burden to establish the jurisdictional amount. *Gaus*, 980 F.2d at 566. Thus, the motion to remand is **GRANTED** on this ground.

Having found that remand must be granted because the amount in controversy has not been sufficiently established, the Court declines to reach the other issue raised in Plaintiff's motion to support remand—whether complete diversity is present because Defendant Alibaba Group (U.S.), Inc. was fraudently joined.

//

//

## III. REQUEST FOR FEES

In Plaintiff's motion to remand, he also requests that the Court grant him reasonable attorneys' fees that have been incurred as a result of the removal. ECF No. 10 at 17-18. In total, Plaintiff seeks $11,375.00 in fees.

28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." However, absent unusual circumstances, a court may award costs and attorneys' fees under this section "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Thus, where an objectively reasonable basis for removal existed at the time of removal, attorneys' fees may not be granted. *See Lussier v. Dollar Tree Stores, Inc.,* 518 F.3d 1062, 1065 (9th Cir. 2008) (removal will not be deemed objectively unreasonable "solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted").

The Court does not find such objectively unreasonable basis for removal here. At that time, Defendants at the very least had a settlement demand supporting its belief that the amount in controversy was met and it was not until after removal that Plaintiff then disavowed the demand. Further, while the Court finds that Defendants failed to meet their burden to establish the amount in controversy, it was not objectively unreasonable to believe that such an amount could potentially be met based on the allegations. *See De Paredes v. Walmart Inc.*, No. 220CV08297RGKAFM, 2020 WL 6799074, at *3 (C.D. Cal. Nov. 17, 2020) (denying attorneys' fees where even though the Court ultimately disagreed with the defendant's valuation, the basis for seeking removal was still reasonable).

## IV. MOTIONS TO DISMISS

Also pending before the Court are Defendant Ali-Express E-Commerce One Ptd. Ltd.'s motion to dismiss and Defendant Alibaba Group (U.S.), Inc.'s motion to dismiss. ECF Nos. 5, 6. Because the Court grants Plaintiff's motion to remand and finds that

1   Defendants have not sufficiently shown that there is federal subject matter jurisdiction
2   over the case, the Court reserves these motions for decision in front of the court with
3   proper jurisdiction. Accordingly, both motions are **DENIED AS MOOT**.

### V. CONCLUSION

After due consideration and for the reasons discussed above, the Court **GRANTS** Plaintiff's Motion to Remand and **DENIES AS MOOT** Defendants' motions to dismiss.

**IT IS SO ORDERED.**

Dated:  September 4, 2024

Honorable James E. Simmons Jr.
United States District Judge